CRESTWOOD NURSING HOME, APPELLANT, *v.* WHITE ET AL., APPELLEES.

(No. 76AP—839—Decided June 7, 1977.)

*Messrs. Thompson, Swope, Burns & Biswas,* for appellant.

*Mr. William J. Brown,* attorney general, *Mr. William J. McDonald,* and *Mr. Richard J. Nagle, Jr.,* for appellees.

Whiteside, J. Plaintiff appeals from a judgment of the Court of Claims and raises four assignments of error, as follows:

"1. The trial court erred in dismissing plaintiff's complaint and entering judgment against plaintiff on the ground that there was available to plaintiff an adequate administrative remedy.

"2. The trial court erred in not holding that the state and its various agencies were liable for improperly, illegally and without due regard for the requirements of Chapter 119, Revised Code, and the 5th and 14th Amendments to the Constitution, removing plaintiff's patients, terminating plaintiff's vendor contract without prior hearing, and padlocking plaintiff's nursing home contrary to law.

"3. The trial court erred in applying the doctrine of estoppel since the administrative remedy available to plaintiff had nothing to do with plaintiff's damages for failure of the Building Department to follow Chapter 119, Revised Code, and the Welfare's failure to give prior hearing before removing patients and terminating payment under the vendor payment agreement.

"4. The trial court erred in ruling that there was sufficient evidence to establish the affirmative defenses of estoppel and waiver."

Plaintiff brought this action to recover damages allegedly resulting from the termination of a provider agreement by defendant Ohio Department of Public Welfare and the withdrawal of welfare patients from a nursing home operated by plaintiff together with the institution of proceedings, by the defendant State Health Department, to revoke the license of the nursing home.

Plaintiff obtained a license in 1970 to operate the subject nursing home. In connection with the operation of such home, plaintiff entered into a provider agreement with the department of welfare under which that department would pay plaintiff a stipulated rate per day for welfare patients.

Due to complaints respecting the operation of the subject nursing home, inspections were made in May 1972.

The Lake County Building Inspector found various building code violations in connection with the operation of the home. Both plaintiff and defendants were notified thereof. Other inspections noted other deficiencies. On May 12, 1972, patients assigned to the nursing home by state institutions were removed. Shortly thereafter, the private patients also transferred, leaving the home empty. In early June 1972, the chief enforcement officer of the Lake County Building Department placed a sign on the building indicating it was unfit for human habitation. On June 2, 1972, the acting director of public welfare notified plaintiff that its provider agreement would be terminated effective July 1, 1972. On June 21, 1972, plaintiff was notified by the state director of health that plaintiff's nursing home license would be revoked but that plaintiff was entitled to a hearing upon the issue of revocation.

Although no prior hearing was provided with respect to the termination of the provider agreement, a hearing was made available to plaintiff upon that issue, which plaintiff initially indicated it desired but then withdrew its request.

As to the nursing home license revocation proceedings, plaintiff did request a hearing and had one, resulting in an order being entered in November 1972 dismissing the proposed action.

By letter dated November 9, 1972, the Lake County Department of Welfare was notified by the Ohio Department of Public Welfare that Crestwood Nursing Home was eligible for vendor payments as an intermediate care facility upon the submission of certain information. On November 30, 1972, a new provider agreement was executed between plaintiff and the Ohio Department of Public Welfare for a period of twelve months terminable by fifteen days written notice by either party.

No copy of any prior agreement, including one in effect in May 1972 was introduced into evidence. Although plaintiff's agent testified he remembered signing one, neither plaintiff nor the department of welfare could locate a copy of any such signed agreement. An unsigned copy of a

form of agreement purportedly similar to that plaintiff claims to have executed was introduced into evidence. However, the evidence indicated that no provider agreement was necessary at the time in order for vendor payments to be made to a qualified licensed nursing facility.

Turning to specific considerations of the assignments of error, plaintiff is correct in its assertion that the Court of Claims erred in stating that it lacked jurisdiction to entertain this action because of the availability of the administrative remedies. The availability of such remedies, including those under the administrative procedure act, do not in any way affect the jurisdiction of the Court of Claims, although under proper circumstances they may affect the right of a particular plaintiff to maintain a claim for relief. Factual determinations which were made in an administrative proceeding and which were adverse to a plaintiff may well be binding upon the plaintiff in an action in the Court of Claims under some circumstances. For example, in this case, had the administrative proceedings resulted in a revocation of plaintiff's nursing home license, plaintiff would have been in no position to claim that the provider agreement was terminated without cause.

However, its lack of jurisdiction was neither the sole nor primary predicate upon which the Court of Claims based it judgment. For reasons stated hereinafter, the error was not prejudicial, and the first assignment of error is not well taken.

The second assignment of error raises the basic issue in this case: whether or not under the facts and circumstances hereof, plaintiff has a claim for relief against the state of Ohio. We conclude that it does not.

Plaintiff predicates its claim upon an alleged violation of due process when its "contract" was terminated without a prior notice and hearing, citing the decision of this court in *Shady Acres Nursing Home, Inc.*, v. *Canary* (1973), 39 Ohio App. 2d 47. However, plaintiff must first establish a claim for relief. The mere allegation of a denial of constitutional rights by the state does not in and of itself constitute a claim for relief. The state is to be

liable under the waiver of sovereign immunity under the same circumstances as private persons. It is incumbent upon plaintiff to demonstrate a claim for relief that could have been asserted against the state prior to the waiver of sovereign immunity previously barred by that doctrine. From an examination of the entire record, it is quite clear that the only possible claim for relief that plaintiff could assert against the state in this case would be a claim of breach of contract. Despite the alleged Fifth and Fourteenth Amendment "window dressing," plaintiff essentially claims merely that the state breached a vendor contract by terminating it without a prior hearing.

However, as indicated by the Court of Claims, the only executed agreement between plaintiff and the state (executed subsequent to the time period herein involved) provided for termination without cause by either party upon fifteen days' written notice. Such notice was given to plaintiff prior to termination.

In fact, at the time of termination, there were no patients in plaintiff's home, it having been condemned as unfit for human habitation by the Lake County Building Department. Plaintiff tries to circumvent this fatal defect in its case by alleging that the Lake County Building Department is an agency of the state and operated as such. There is nothing in the record of this case which supports such a contention. Although there is cooperation between the state welfare department and the Lake County Building Department, the building department remains a county agency, not a state agency, neither the state health department nor the state wlfare department having any power to control the activities of the Lake County Building Department.

The evidence reflects that the real reason patients were removed from plaintiff's home and that the alleged provider agreement was terminated was because of the action of the Lake County Building Department in determining that the home was unfit for human habitation. Neither the state welfare department nor the state health department is responsible for such action by the Lake County

Building Department and they would have been remiss in their duties had they not taken the precise action that they did under the circumstances. Furthermore, plaintiff has failed to prove that the building inspector was not justified in his determination of violations at the premises involved operated by plaintiff.

The evidence further indicates that plaintiff chose to correct the deficiencies and meet the requirements in order to retain its nursing home license. Construing the evidence most strongly in favor of plaintiff, the only reasonable conclusion is that the State Welfare Department was fully justified in terminating the provider agreement.

As to the removal of patients from the home, there is no evidence herein of any agreement for the placement of such patients in plaintiff's home, nor of the duration of such placement. Apparently, this was some kind of oral arrangement not part of a written agreement, and it is not even contended that any degree of permanency of placement was involved. The placement of the patients by state institutions is an entirely separate matter from the provider agreement. Under the provider agreement, the only obligation of the State Welfare Department is to make payment at the proper rate to plaintiff for care rendered to individuals who are eligible for welfare assistance under the program involved. Under such an agreement, the State Welfare Department does not agree to provide the patients.

The evidence in this case, however, indicates that some state institutions had placed certain patients in the home operated by plaintiff. The state institutions involved removed these patients when they learned of the findings by the Lake County Building Department.

Again construing the evidence most strongly in favor of plaintiff, the only reasonable conclusion is that the state institutions involved were required to remove the patients from plaintiff's home in light of the findings by the Lake County Building Department, that the state department of welfare was fully justified in terminating any provider agreement, and that the state department of

health was fully justified in instituting proceedings for the revocation of plaintiff's nursing home license. That being the case, there was no wrongful act on the part of any of the state agencies involved. As indicated above, the state did not padlock plaintiff's nursing home; this was done by the Lake County Building Department, a county agency, not a state agency, although it is empowered to enforce certain state laws. Accordingly, plaintiff has failed to show any claim against the state, and the second assignment of error is not well taken.

The third and fourth assignments of error deal with the defenses of estoppel and waiver. Although there is some evidence and some justification for the application of such doctrines in this case, it is unnecessary to resolve those issues because, even if the trial court erred in utilizing those doctrines, such error was not prejudicial in light of the findings by this court in connection with the first two assignments of error. Since plaintiff had no claim for relief in any event under the facts and circumstances hereof, it makes no difference whether or not the defenses of estoppel and waiver are applicable. Accordingly, the third and fourth assignments of error are not well taken.

For the foregoing reasons, all four assignments of error are overruled, and the judgment of the Court of Claims is affirmed.

*Judgment affirmed.*

REILLY and STERN, JJ., concur.

STERN, J., retired from the Supreme Court of Ohio, assigned to active duty in the Tenth Appellate District under authority of Section 6(C), Article IV, Constitution.